LAUMAN v. URSCHEL WHITE LIME CO.

(Circuit Court of Appeals, Sixth Circuit. February 17, 1905.)

No. 1,358.

PATENTS—INVENTION—PROCESS OF SLAKING LIME.

The Lauman patent, No. 678,500, for a process of slaking lime by agitating it in a closed cylinder with sufficient water to convert it into a dry hydrate of lime, is void for lack of patentable invention, in view of the prior art, and especially of the process shown in the Adams patent, No. 309,383.

Appeal from the Circuit Court of the United States for the Northern District of Ohio.

John H. Roney, for appellant.

Almon Hall and F. M. Dotson, for appellee.

Before LURTON, SEVERENS, and RICHARDS, Circuit Judges.

PER CURIAM. This is a bill by A. H. Lauman against the Urschel White Lime Company, charging the infringement of patent No. 678,500, granted July 10, 1901, for a method or process of treating lime. The bill was filed November 28, 1902. The court, without an opinion, sustained the defenses and dismissed the bill on the ground that the patent was void and was not infringed.

As described in the patent, Lauman's invention was a process of "dry-slaking the burnt lime by adding thereto just that quantity of water sufficient to convert the lime into a hydrate of lime, and then by agitating or mixing the materials until the resultant product becomes a thoroughly dry hydrate of lime; air being excluded from the lime during the slaking operation, and the steam confined within the vessel during the operation." In carrying out this process, the patentee employs "a substantially air and steam tight" cylinder or vessel, in which is mounted on a shaft a series of arms or paddles, capable of being rotated. The burnt lime is charged into this vessel with just sufficient water to moisten and disintegrate it. The vessel is then sealed, and the agitators revolved until the lime is reduced to a powdered, dry hydrate of lime, uniformly and evenly slaked. The specification states:

"In the beginning of the operation, the union of the lime and water creates a high temperature within the sealed vessel, which converts a portion of the water not at once combined with the lime into steam, which, during the constant agitation of the materials, is thoroughly and uniformly absorbed by the lime, converting the same into a dry hydrate."

The claim reads as follows:

"The herein described method or process of treating lime, which consists in adding to burnt lime just sufficient water to convert the same into a dry hydrate; the mixture being constantly agitated and thoroughly commingled and air excluded and pressure maintained during the conversion of the burnt lime into a dry hydrate of lime."

It is claimed the patent is void because the process lacks patentable novelty, being old and anticipated in prior patents; those relied upon being No. 137,323, issued to James H. Rowland, April 1, 1873; No. 237,500, issued to Dimelow & Peadro, February 8, 1881; and No. 309,383, issued to William I. Adams, December 16, 1884.

It is only necessary to consider the Adams patent, which is for a process of slaking lime. After the burnt lime has been pulverized, the specification says:

"It is passed into the slaking chamber, which is provided with mixing paddles, which are driven by any suitable power, and which continually disturb the lime as the water is applied; thereby subjecting all portions of the lime to the water as it slakes. The chamber being air-tight, comparatively speaking, prevents any particles or substance from escaping as the slaking

is taking place; the water being supplied through pipes of suitable construction. After it is thoroughly mixed or slaked, it is drawn off into vats, and left standing therein a sufficient time under water to allow any particles which may not be thoroughly slaked in the mixing chamber to become so, from which it is removed, and is then ready for use."

Adams' claims are:

"(1) The method, as herein described, of slaking lime by first reducing the lime to a uniform condition by pulverization and bolting, then placing it in a tight or covered slaking chamber, and, while inclosed, applying the water and stirring, for the purpose as herein specified.

"(2) The process of slaking lime by first reducing it to a uniform condition by pulverization, and then subjecting it to the water while in an inclosed mixing chamber, for the purpose as herein specified."

It is urged that this is not the process used by Lauman; that a measured quantity of water (being the only water used) is not added to the lime at the start, and the mixture then confined in the closed vessel, but water is continually added as the process goes on, and the product is not a dry hydrate, but a semifluid mass, capable of being "drawn off into vats." But the only difference is in the quantity of water used, and the time when it is applied. The use of the closed chamber, "airtight, comparatively speaking," the introduction therein of the lime with the water to slake it, and the employment of a suitable stirring apparatus during the slaking operation, are present in each process. Lauman, however, ascertains in advance the quantity of water necessary to do the slaking, and introduces it at the start, while Adams introduces the water as needed until the lime is all slaked. Adams' chamber being substantially airtight, the same pressure from the confined steam resulting from the union of the lime and water would be obtained. The question therefore is, was the modification of Adams' process by ascertaining the quantity of water needed, and introducing it at the start, an act of invention? Did it involve an exercise of the inventive faculty? We are satisfied it did not. Nothing but an acquaintance with the usual processes of slaking lime, and the exercise of ordinary powers of observation and deduction, were required to suggest this change. To find out how much water was needed, it was only necessary to experiment and observe; and to apply that water at the start, so that all the water might be mixed at the same time with all the lime, the exercise of powers of reflection and reason, common to all, might suffice to suggest. No superior gift of intelligence, no intuitive faculty of discovery, none of those higher powers which patents are intended to reward and inspire, were required or employed to suggest the change made by the Lauman patent.

Holding the patent void for the reason stated, the judgment below is affirmed.